FILED
2026 Aug-14 PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **AMANDA L. MCCORMICK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CULLMAN REGIONAL MEDICAL CENTER,**<br><br>**Defendant.** | **Case No. 5:24-cv-820-HDM** |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on a motion for summary judgment by Defendant Cullman Regional Medical Center ("Cullman Regional"). (Doc. 27). For the reasons explained below, the motion is **GRANTED**.

**BACKGROUND**

Amanda McCormick is a fifty-six-year-old registered nurse who was employed by Cullman Regional in its cardiology clinic from June 2018 to March 2023. (Doc. 43, ¶¶ 1, 43). McCormick had a variety of duties there, including assisting multiple doctors with patient care as needed—though unlike the other clinic nurses in her clinic, she was never assigned to a specific doctor—and managing and scheduling patient referrals for Cullman Regional's pacemaker clinic. *Id.*, ¶¶ 2–3, 5; (Doc. 46 at 5).

Cullman Regional identified a few issues with McCormick's performance in this role. In September and October 2021, Schinley Land,[1] the Executive Director of Physician Services at Cullman Regional, addressed with McCormick a backlog of charges to payors for work done at the pacemaker clinic and a backlog of patient referrals in need of scheduling—both of which were McCormick's responsibility. (Doc. 43, ¶¶ 6–7, 9–11). In December 2021, McCormick's performance evaluation noted that she "allowed assigned duties to lag," her "scheduling efficiency is poor," and that, "[w]hile she makes great efforts to accommodate the patient, she has not taken the initiative to create better processes for the intake of patient referrals," causing some patients to wait for appointments for over a year. (Doc. 25-3 at 1, 4).

**Reduction-In-Force Plans at Cullman Regional**

In 2022 and 2023, Cullman Regional implemented a series of three reduction-in-force ("RIF") plans to reduce costs. (Doc. 43, ¶ 14). In June 2022, as part of the first RIF, Land was involved in making recommendations for cost-saving measures in Cullman Regional's physician practices. *Id.*, ¶ 15. Based on her knowledge of McCormick's duties and her inefficiencies in performing those duties, Land recommended that Cullman Regional terminate McCormick's employment. *Id.*; (Doc. 25-1, ¶ 13). Cullman Regional, however, ultimately did not terminate McCormick as part of that RIF. (Doc. 43, ¶ 17).

---

[1] Like McCormick, Land is over the age of forty. (Doc. 25-1 at 2).

In October 2022, Cullman Regional implemented a second RIF as a part of ongoing cost-saving measures and again asked Land to recommend staffing changes for Cullman Regional's clinics. *Id.*, ¶ 18. Land made various personnel recommendations, including that Cullman Regional either move or terminate McCormick. *Id.*, ¶ 19. Land, in conjunction with Human Resources Director Barbara Estes, offered McCormick either a full-time Registered Nurse position in the main hospital or a part-time position in the cardiology clinic. *Id.*, ¶ 20; (Doc. 46, ¶ 20). McCormick requested to keep her current, full-time job in the cardiology clinic. (Docs. 43, ¶ 21; 46, ¶ 21). Cullman Regional allowed McCormick to remain in her full-time position, justifying her continued employment by adding the additional responsibility of obtaining precertification for tests ordered by doctors in the clinic, (docs. 43, ¶ 22; 46, ¶ 22), a job previously performed by Cullman Regional's Patient Access, Communications, and Resource Scheduling Office, (doc. 25-1, ¶ 23).

After avoiding termination in this second RIF, McCormick continued working in the cardiology clinic. Land continued to express some concern over McCormick's performance, noting issues with her time management and efficiency and with the status of the clinic's patient referral list. (Doc. 43, ¶ 24).

In March 2023, Cullman Regional decided to implement a third RIF in response to the hospital's increased expenses. *Id.*, ¶ 29. Again, Land made staffing recommendations for the clinics she managed, and her recommendations included

multiple terminations and staffing adjustments that would result in savings of approximately $522,812.80. *Id.*, ¶ 30. These staffing changes were a part of a larger action plan developed by Nesha Donaldson, Cullman Regional's Chief Financial Officer, which predicted total cost savings of $2,500,000. *Id.*, ¶ 31. Land's staffing recommendations included termination of McCormick's position and reassignment of her duties. *Id.*, ¶ 42. In Land's view, McCormick, although a registered nurse, performed duties in the cardiology clinic that were primarily clerical, and she worked directly with a limited volume of patients compared to other nurses in the clinic. *Id.* Accordingly, Land believed McCormick's duties could be performed by other employees at a lower cost. *Id.*

**McCormick's Termination and Reassignment of Duties**

On March 31, 2023, Land and Estes met with McCormick and terminated her employment. *Id.*, ¶ 43. Estes provided a memorandum for McCormick, informing her that Cullman Regional decided to eliminate a clinic RN position "due to low volume in the CV clinic and not working at the scope of an RN." *Id.*, ¶ 44. During her termination, McCormick was not offered an open RN position elsewhere at Cullman Regional, (doc. 32-1 at 9), and there is no record evidence that McCormick applied for another job at Cullman Regional, *see* Transcript of Oral Argument at 28–29 (Apr. 23, 2026) ("Tr.").

McCormick claims that Cullman Regional's failure to offer her another position within the organization during this RIF was "a departure from the standard [Cullman Regional] practice." (Doc. 32-1 at 9). She does not cite any record evidence that this is a "standard practice," *id.*, but points to Donaldson's testimony that when Cullman Regional does a RIF, it "tr[ies] to find other positions for people." (Doc. 25-21 at 7). (*See also* Doc. 46 at 10).

After McCormick's termination, Cullman Regional did not hire anyone to replace her. (Doc. 25-1, ¶ 39). Instead, Land testified that she assigned McCormick's pacemaker duties to the clinic's practice manager, Glenda Pelfrey. *Id.*, ¶ 40. Like McCormick, Pelfrey is over the age of forty. (Doc. 25-22 at 1). Pelfrey is not a nurse. (Doc. 25-1, ¶ 40). Pelfrey performed all of McCormick's duties for the pacemaker clinic, in addition to her duties as practice manager of the cardiology clinic, through May 2025. *Id.*, ¶ 41. In May 2025, Cullman Regional outsourced portions of McCormick's duties related to the pacemaker clinic to a third-party company, and Pelfrey continued to perform the portion of McCormick's former duties which required interaction with patients on pacemaker clinic days. *Id.*; ¶¶ 41, 42.[2]

[2] Citing Schinley Land's declaration, (doc. 25-1, ¶ 41), McCormick states that Pelfrey performed all of McCormick's duties for only "one and a half months." (Doc. 46 at 12). However, the cited portion of the declaration makes clear that Pelfrey performed McCormick's duties for two years *and* one and a half months—March 2023 to May 2025. (Doc. 25-1, ¶ 41). Furthermore, McCormick cites to Land's declaration for the proposition that McCormick "was not replaced." (Doc. 46 at 12) (citing Doc. 25-1, ¶ 39). However, what Land actually testified to was that Cullman Regional "did not *hire anybody* to replace Ms. McCormick." (Doc. 25-1, ¶ 39) (emphasis added).

At no point did anyone in management at Cullman Regional ever say anything to McCormick, disparagingly or otherwise, regarding her age. *Id.,* ¶ 25. There is also no evidence in the record that the decisionmakers who decided on the third RIF or McCormick's termination were under the age of forty themselves. *See* Tr. at 24–25.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party, if it will bear the burden of proof at trial, to go beyond the pleadings and—by

---

Instead, Land "assigned Ms. McCormick's Pacemaker Clinic duties to the Clinic's practice manager, Glenda Pelfrey." *Id.*, ¶ 40.

pointing to affidavits, depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## ANALYSIS

McCormick brings one claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. The ADEA prohibits employment discrimination against applicants and employees on the basis of their age. 29 U.S.C. §§ 623, 631. Specifically, it protects those who are at least forty years old. *Id.* "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 174.

A plaintiff can offer proof of disparate treatment through direct evidence, circumstantial evidence, or both. Since this case is based only upon circumstantial evidence, the court will utilize the *McDonnell Douglas* burden-shifting framework and the convincing mosaic standard to analyze whether McCormick's claim survives summary judgment. Under the Eleventh Circuit's recent guidance provided in *Ismael v. Roundtree*, whether the court begins with the *McDonnell Douglas* burden-

shifting framework or the convincing mosaic analysis depends "on whether the plaintiff can demonstrate a *prima facie* case or not." 161 F.4th 752, 764 (11th Cir. 2025).

If a plaintiff can show a *prima facie* case of discrimination, she "is entitled to a rebuttable presumption of illicit intent. This necessarily means that if the defendant fails to proffer evidence of a legitimate reason for the adverse employment action, summary judgment in favor of the plaintiff is appropriate." *Id.* If, on the other hand, the defendant does proffer evidence of a legitimate reason, they successfully rebut the presumption of illicit intent. *Id.* At that point, "'the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.' It 'simply drops out of the picture.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993)). Then, the court must "ask whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)) (citation modified). The circumstantial evidence may include "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* at 760

(quoting *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

## I. *Prima Facie* Case

To make a *prima facie* case of age discrimination under the ADEA, the plaintiff generally must show (1) she was at least forty years old; (2) she was subject to an adverse employment action; (3) a substantially younger person filled the position from which she was discharged; and (4) she was qualified to do the job from which she was discharged. *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

In the Eleventh Circuit, however, courts apply a modified *prima facie* test in certain cases where the plaintiff was terminated as part of a RIF. In a RIF case, a plaintiff may establish a *prima facie* case by showing (1) she was at least forty years old; (2) she was subject to an adverse employment action; (3) she was qualified for her current position or to assume another position at the time of termination; and (4) there is evidence from which a factfinder could reasonably conclude the employer intended to discriminate against her in reaching the employment decision at issue. *Crisman v. Fla. Atl. Univ. Bd. of Trustees*, 659 F. App'x 572, 578 (11th Cir. 2016); *Coutu v. Martin Cnty. Bd. of Comm'rs.*, 47 F.3d 1068, 1073 (11th Cir. 1995). Importantly, this modified *prima facie* standard is applied in RIF cases only when a position is completely eliminated. *Adams v. Holland*, 824 F. App'x 982, 984–85

(11th Cir. 2020); *Mazzeo v. Color Resolutions, Intern., LLC*, 746 F.3d 1264, 1270–72 (11th Cir. 2014). The modified test does not apply where a plaintiff's position was not completely eliminated and, instead, "some of [her] former responsibilities were delegated to another employee, in addition to that other employee's own responsibilities." *Mazzeo*, 746 F.3d at 1271. *See also Jones v. Alfa Mutual Ins. Co.*, No. 2:21-cv-659-AMM, 2024 WL 3952573, at *5 (N.D. Ala. Aug. 26, 2024) (holding that for purposes of *Mazzeo*, the employer "replaced" the employee when it "delegated at least some of their responsibilities to other employees in addition to those employees' own responsibilities").

Viewing the evidence in the light most favorable to McCormick, Cullman Regional delegated at least some of McCormick's responsibilities to another employee in addition to that employee's own responsibilities, and therefore Cullman Regional "replaced" McCormick for purposes of *Mazzeo*. For example, both McCormick and Land testified that after McCormick's termination, Cullman Regional assigned McCormick's Pacemaker Clinic duties to Pelfrey. (Docs. 25-13 at 41; 25-1 at 12). While the separation memorandum presented to McCormick at the time of her termination stated that "Cullman Regional has made the decision to eliminate a clinic RN position due to low volume at the CV Clinic and not working at the scope of an RN," (doc. 25-9 at 1), the evidence shows that, in actuality, McCormick's duties were merely reassigned to Pelfrey. Following the binding

precedent set by *Mazzeo*, the court concludes that Pelfrey replaced McCormick. Therefore, the court starts its analysis of McCormick's ADEA claim with the traditional *prima facie* test.

McCormick's evidence fails to present a *prima facie* case of age discrimination. While McCormick was over the age of forty at the time of her termination and was qualified to do the job from which she was discharged, she was not replaced by a "substantially younger person." *Liebman*, 808 F.3d at 1298. Her duties were delegated to Pelfrey, who was substantially *older* than McCormick. (*See* Doc. 25-22 at 1). Because McCormick cannot state a *prima facie* case of age discrimination, the court considers whether McCormick can establish a convincing mosaic of discrimination.

**II. Convincing Mosaic**

A convincing mosaic of circumstantial evidence "is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023).

The court does not find any evidence of suspicious timing in the record. McCormick was already a member of the protected class when she was hired by Cullman Regional, and she was employed there for almost five years. Likewise, there is no evidence in the record of ambiguous statements indicating age-related

animus. McCormick did testify that the other nurses, who were younger than her, called her "momma," and the younger nurses would come to her for advice on how to handle particular matters. But McCormick does not argue that this indicates age-related animus rather than endearment, and there is no evidence that any of the decisionmakers referred to McCormick as "momma."

The court next considers whether there is systematically better treatment of similarly situated employees. McCormick first points to the only other registered nurse in the cardiology clinic, Lauren Dixon. McCormick states that she and Dixon were similarly situated, but, unlike McCormick, Dixon was not terminated in the RIF. It is undisputed, however, that Dixon was assigned to work directly with a specific physician and his patients on a daily basis. (Doc. 43 at 12). In contrast—and importantly for Land's decision to include McCormick in the third RIF—McCormick was not assigned to any one physician, her duties in the clinic were primarily clerical in Land's judgment, and she worked with a limited volume of patients during the two-and-a-half days the pacemaker clinic was conducted each month. *Id.* Both Dixon and McCormick were employed within the scope and pay range of a registered nurse, but their responsibilities were different. As Land testified and McCormick's termination memorandum reflects, Cullman Regional believed McCormick was "not working at the scope of an RN," (doc. 25-9 at 1), and Cullman

Regional would save money by assigning her duties to other employees, (doc. 43 at 13).

McCormick also directs the court to employee Kellie Seguin, a certified medical assistant, who was included in Cullman Regional's third RIF plan. Instead of being terminated, Seguin was transferred to an open position in Cullman Regional's call center. McCormick compares her situation Seguin's, arguing that she was not offered or informed of any registered nurse vacancies, which she allegedly would have accepted.

Notably, however, the record is devoid of evidence of Seguin's age, meaning the court is unable to assess whether this disparate treatment of Seguin and McCormick was on the basis of age. It would require the court to engage in pure speculation to assume that Seguin was under the age of forty and that this resulted in her being treated differently than McCormick. Furthermore, the record evidence shows that when McCormick was previously subject to termination or demotion during the October 2022 RIF, she was offered a full-time, vacant position in the hospital as an RN—and McCormick instead asked to keep her current position as clinic RN in the cardiology clinic handling pacemaker clinic duties. There is no record evidence that Cullman Regional had a policy requiring that McCormick be offered a vacant RN position during a RIF, and the law does not mandate such a policy or practice. Indeed, "the ADEA does not mandate that employers establish an

interdepartmental transfer program during the course of a RIF, or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course." *Ayala v. Sheriff, Broward Cty. Florida*, 594 F. App'x 602, 603 (11th Cir. 2015) (quoting *Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1344 (11th Cir. 2003)).

Cullman Regional's handling of Dixon and Seguin does not establish systematically better treatment of similarly situated employees, and neither does the mere fact that McCormick was the oldest clinical RN to be terminated in the March 2023 RIF.

Lastly, the court also considers whether there is evidence that Cullman Regional's proffered reason for McCormick's termination was pretextual. "A reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, and that discrimination was the real reason." *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1196 (11th Cir. 2024). "To show pretext, [a plaintiff] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citation modified). However, "the pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head."

*Akridge*, 93 F.4th at 1196. As such, a plaintiff has not established pretext where she merely quarrels with the wisdom or business judgment of her employer. *Alvarez*, 610 F.3d at 1265–66.

Cullman Regional asserts that its legitimate, nondiscriminatory reason for McCormick's termination is that Land recommended McCormick to be included in the March 2023 RIF. Land made this determination because, in her view and understanding, McCormick was the *only* clinic nurse Land supervised who was not performing duties directly with an assigned physician and interacting face-to-face with patients on a daily basis. (Doc. 25-1 at 10). In Land's view, McCormick's duties were primarily clerical, and McCormick worked directly with a limited volume of patients during the two-and-a-half days the Pacemaker Clinic was conducted each month. *Id.* Land believed that McCormick's duties could be assigned to other employees and that Cullman Regional would save money as a result—the objective of a RIF. *Id.* And Land accomplished this by assigning McCormick's pacemaker clinic duties to Pelfrey, who is not a nurse. *Id.* at 12.

McCormick attempts to show pretext by arguing that Cullman Regional deviated from its standard practice for RIFs with respect to McCormick by not offering her a vacant position. To support this, McCormick relies on the deposition testimony of Donaldson, Cullman Regional's CFO. Donaldson testified that "typically when we do a RIF, we try to find other positions for people." (Doc. 25-21

at 7). She further testified that she thought Cullman Regional "would have offered her a nursing position in the hospital" and that she "can't imagine them not telling her we had RN openings." *Id.* Relying on this deposition testimony alone, McCormick argues that offering employees subject to a RIF an open position within Cullman Regional was a "standard practice" or "standard procedure." (Doc. 46 at 27–28). She then argues that, by not offering her an open RN position during the third RIF, Cullman Regional deviated from its standard practice and that this deviation permits an inference that McCormick was terminated because of her age. Even viewing this evidence in the light most favorable to McCormick, reaching the conclusion she urges would once again require speculation by the court. Donaldson's testimony was not that Cullman Regional had a standard practice or procedure of offering openings to all employees subject to a RIF. Donaldson testified that "*typically* when we do a RIF, we *try* to find other positions for people." (Doc. 25-21 at 7) (emphasis added). McCormick argues that, because Cullman Regional "did not find or offer McCormick another position or inform her of other clinical Registered Nurse positions available at the clinic," (doc. 46 at 27), it must have deviated from and inconsistently applied its standard procedure. This, McCormick concludes, is sufficient to infer intentional discrimination by Cullman Regional.

The court finds this argument unpersuasive. While "an employer's deviation from its own standard procedures *may* serve as evidence of pretext," *Hulbert v. St.*

*Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (emphasis added), it would require speculation here to assume from Donaldson's testimony alone that it was a "standard procedure" of Cullman Regional to offer all employees subject to a RIF another position within the organization.

Ultimately, McCormick fails to offer any evidence that rebuts Cullman Regional's explanation for her termination. No evidence in the record rebuts the evidence that it was Land's responsibility to compile a list of staffing changes that would save Cullman Regional money, she believed that McCormick's duties were primarily clerical, and she believed that those duties could be reassigned to a current employee without hiring someone new to replace McCormick. There is simply insufficient evidence to find that Cullman Regional's asserted justification is false such that a trier of fact could conclude that it unlawfully discriminated on the basis of age.

Therefore, McCormick has failed to create a genuine issue of material fact on the question of whether Cullman Regional's proffered reasons for her termination and inclusion in the RIF were pretextual. For all the reasons explained above, McCormick has failed to present sufficient circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmakers.

## CONCLUSION

For the reasons stated herein, the court **GRANTS** Cullman Regional's motion for summary judgment. (Doc. 27). The court will enter final judgment contemporaneously with this order.

**DONE** and **ORDERED** on August 14, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE